## STATEMENT OF FACTS

I have been a Special Agent with the FBI since December 2020. Since that time, I have been assigned investigative responsibilities in the areas of civil rights violations, public corruption, fraud against the government, and healthcare fraud. I am currently assigned to D.C. Health Care Fraud of the Washington Field Office. I have received training and experience in interviewing and interrogation techniques, surveillance techniques, arrest procedures, and search and seizure.

This affidavit is in support of an arrest warrant and is intended to establish probable cause for the arrest of Renita MCINTYRE. This affidavit is not intended to convey all the facts known to law enforcement. The following facts and circumstances set forth in this affidavit are based on information supplied to your affiant by members of law enforcement and a review of reports and camera footage of the incident.

On August 26, 2025, at approximately 3:00 a.m., pursuant to President Trump's March 28, 2025, Executive Order, "Making the District of Columbia Safe and Beautiful" and August 11, 2025, Executive Order, "Declaring a Crime Emergency in the District of Columbia" deploying Metropolitan Police Department ("MPD") officers for federal purposes under D.C. Code § 1-207.40, the MPD officers, along with deputies with the United States Marshals Service, were on duty and on patrol.

Specifically, at that time, officers with MPD and deputies with the United States Marshals Service ("USMS") responded to a call for a fire at the triangle median created by the intersections of 24th Street, I Street, and New Hampshire Avenue in Northwest Washington, D.C. Specifically, trash had been apparently set on fire in the center of that median.

While canvassing the area, officers located MCINTYRE in the 900 block of 23rd Street NW. MCINTYRE matched the description of an individual who had been disorderly throughout the night and had been seen leaving the area of the fire. Officers attempted to perform an investigative stop of MCINTYRE. As they did, MCINTYRE spit in the face of Deputy U.S. Marshal Dylan Anderson, hitting him in the eye and face. When Deputy Anderson informed the other officers that MCINTYRE had spit on him, MCINTYRE spontaneously stated, "I sure the [expletive] did. And I'd spit again, you [expletive]."

Moments later, as officers were restraining MCINTYRE, she kicked Deputy United States Marshal Jennifer Mazza in the front of one of her legs.

Deputy U.S. Marshals Anderson and Mazza were both dressed in uniform with vests identifying themselves as with the USMS and were in the course of performing their duties, that is, investigating the fire in that area.

2

      Your affiant submits that probable cause exists to charge MCINTYRE with two violations of 18 U.S.C. § 111 **(Assaulting, resisting, or impeding certain officers and employees of the United States)**.

Respectfully submitted,



Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on August 27, 2025.

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

2